Council. Thank you for the arguments. The case will be submitted and you're excused. But welcome to listen in. Thank you. Hey, our second case is Dalton versus Silver City. 19-2047. Uh, for the talents. Um, Miss Rogers. I'm sorry. Good morning, Your Honor. Okay. You may proceed when you're ready. Thank you, Judge. Good morning, Your Honor's May it please the court. My name is Cody Rogers, and I represent Silver City Police Department Chief Ed Reynolds and Captain Ricky Villalobos. In this matter, I want to start by acknowledging that the events that give rise to this case are undeniably tragic. The impact on the numerous families that were involved in this case and the suffering that they've experienced are virtually unimaginable. And I do think that it's important to recognize that at the outset before I proceed. The issue that we're here today to address is a narrow issue. The district courts ruling allows, um, the appellees to go forward with her claim that Captain Villalobos and Chief Reynolds violated the decedent Miss Bascom's equal protection rights because they treated her differently than other victims of domestic violence because her abuser was an employee of the Silver City Police Department. And our position is that Chief Reynolds and Captain Villalobos were entitled to qualified immunity because neither the appellee or the district court was able to, um, Qualified immunity applies in equal protection cases just like it applies in every other case. Um, the analysis is the same and the same salient points that have emerged from the qualified immunity jurisprudence over the course of the last few years apply in this particular analysis as well. The inquiry has to be, um, conducted considering the specific facts and context of this case. Relevant law has to be particularized to the facts of this case. Clearly, established law cannot be defined at a highly generalized, um, level, and it cannot be, um, stated in broad terms or as a broad general proposition of law. Clearly, established law has to place the question at issue in the case beyond debate, and those standards do not differ. I could interrupt here. Um, there are chief judge. It's an equal protection theory, and, um, the plaintiff's theory is that there's a subclass of crime victims, domestic violence victims who were treated differently than other types of crime that victims or domestic violence victims. So are you agree with that general proposition so far that that's what the plaintiffs have alleged in this case? Judge? Yeah. Yes. Okay. So, you know, step two. It's not. It's not a protected class here. So, um, don't we? We look at the government treating these classes differently under a rational basis theory, and I'm just wondering, um, I don't really see where the weather where the police department, the county articulated a rational basis for treating this subclass of domestic violence victims differently than other domestic violence victims. Could you? Could you help me on that? That's not specifically at issue with what we're talking about currently, Chief Judge. But to answer your question, the basis for treating, um, those particular individuals differently was not the basis that the policies that the district court took issue with exist for. They have no no reference really to categories of victims or two different classes of victims. What they're designed to do is address how the Silver City Police Department handles its internal affairs investigations when its own officers are suspected of criminal conduct. And so the district court's analysis is somewhat muddled in terms of whether we're focusing on on the category of victim that these policies impacted or the conduct that the policies were directed at. Um, and and that's important in a couple of in a couple of ways that pertain to the qualified immunity analysis, your honor. Um, because the policy considerations are the same in an equal protection claim as they would be in a Fourth Amendment claim, a First Amendment claim, particularly in the police context where we're dealing with, um, fast, tense, rapidly evolving situations, a used and implemented on the part of the officers. Um, reasonable government officials have to have, um, have to be able to understand what the rules are. And the purpose of the qualified immunity doctrine is to allow them to do so so that they know when their conduct would be considered unlawful and that they don't engage in that conduct. Um, and because those policy considerations, the plaintiff's theory is that, um, the police engaged basically in in selective enforcement of domestic violence law. And then they point to Watson and Price's, um, showing the proposition that a reasonable police officer would know that selective enforcement of domestic violence victims would be unconstitutional. Could you could you react to that? Absolutely. Thank you, Chief Judge. Um, price Cornelius in and Watson. Neither of those cases is specifically or is specific enough in terms of being particular as to the facts of this case to have constituted clearly established law and sort of working backwards in time. Price Cornelius in this court held that it was an equal protection violation for an under sheriff to refuse to enforce and a valid and enforceable protective order obtained by a gay victim of domestic violence. Um, and that was based on the fact that that particular under sheriff had enforced a valid and enforceable order of protection. Um, in the case where the victim was heterosexual, um, it's notable that the court in that particular case, um, based its ruling on a single comparator case. And the reason it did that is because that was the only other case that that particular under sheriff was and the court specifically rejected the idea that it could rely on cases where the under sheriff maybe assisted other deputies or was the secondary or backup officer at the call. And instead, this court was very clear that that case was the only valid comparator because it showed what that particular law enforcement officer did in a in a situation in two situations where the only difference, the only meaningful difference was the sexual orientation of the victim. Why does that? Uh, didn't mean to talk over anybody, but, uh, Miss Rogers, why does that matter now? Price for Nelson, uh, recognized in Watson that there is no, although there is no general constitutional right to police protection, the state may not discriminate in providing such protection. So, for example, if if I, uh, complain that I am being treated differently than other people, not for any protected right or any fundamental right, but maybe people don't. The police don't like the people in my neighborhood. Uh, they're hostile to my local community, and they discriminate against me in providing me adequate police protection. In my view, why isn't the distinction that I would have exactly like the lesbian in Price Cornelison? I mean, I'm not sure why, if there's just one comparator, why that would undermine the clarity of the expression in Price Cornelison based on its interpretation of Watson. Thank you, Judge Macrack. There's there's two issues there. The first issue is that the Price Cornelison court required that comparator evidence. There was no evidence like there was in the Watson case, which was statistical, indicating that that particular police department, um, arrested domestic violence abusers at a rate of about half. I think it was of regular assault suspects, and the Watson court relied on that statistical evidence to sort of make the connection that you're describing in terms of a law enforcement agency discriminating in the application of that police protection. In Price Cornelison, there was no statistical evidence. So the court looked at, um, that particular comparator evidence. In the present case, we have neither. Well, we have we have eight other incidents involving assault, swerving, uh, you we do have comparators in our case. That's why I'm not understanding how you could distinguish Price Cornelison on the absence of comparators. We do have comparators. Judge, as the district court pointed out, none of those comparator cases involve either Chief Reynolds or Captain Villalobos as the officers who were at all involved in those. And as the district court also noted, there is no comparator evidence with regard to either of those individually named defendants. That's the key difference between the comparator evidence that was satisfactory to the court in Price Cornelison and the comparator evidence that was introduced below here. And it's an important difference because again, excuse me, didn't the district court, though, find that kind of the combination of the Silver City Police Department domestic violence policy, which more or less requires an arrest where there's probable cause with kind of the broader policy involving misconduct by police officers created a facially discriminatory impact. Um, by the way, those two policies work together. It did, Chief Judge, and I don't believe that we we are challenging. We can't challenge that ruling currently, but it is important in the terms in the in that it sets the qualified immunity analysis because that's still an important step. What that did do was allowed the court, the district court to infer discriminatory intent on the part of Captain Villalobos, um, and Chief Reynolds without performing the analysis that was required under Price Cornelison or Watson in terms of statistical evidence or in terms of comparator evidence. Um, all the policy forced him to treat the situations differently, whether whether they had, you know, bad motives or good motives. Um, they intended to follow the policy and the policy intended to treat the classes differently. The policy and again, Judge, I think there's a slight distinction that is subtle but important, and that that that is that the policy treated law enforcement officers differently or law enforcement officers who were employed by the town of Silver City differently from other domestic violence aggressors. Um, it did not discriminate against the category of of, um, victims that Miss Baskin's decedent fits within the function of the functional effect of it is that, um, 11 victims going to get the the, um, perpetrator, the accused arrested right away, and the victim of a arrested right away, even if there's probable cause because it's gonna be, um, offloaded to another jurisdiction, right? It's actually more narrow than that. Even Chief Judge, the district court's finding that the policy on its face was discriminatory was based on the policy that addresses only employees of the Silver City Police Department. So the distinction is between that and law enforcement officers and then between that and sort of the larger general public. Um, and the practical effect of that is that, um, there is a different process for individuals who were employed by the town of Silver City Police Department to be investigated for serious crimes, including domestic violence than there is for non employees. Um, and that was the practical impact of that policy. However, given the fact that there is that that policy does not violate clearly established law. Chief Reynolds and Captain Villalobos were still entitled to qualified immunity. Um, excuse me, but I want to make sure I'm understanding what you're arguing. You are arguing that a policy that favors employees of the Police Department of Silver City, uh, in is not an inappropriate classification. No, Judge. What we're arguing is that when the fact that slowly slowly, please, you're arguing what? What we're arguing in this instance with regard to the policy, your honor, is that the facts of this case are not sufficiently analogous to those in either Price Cornelison or Watson. No, I understand that argument. But focus on my question, please. In terms of the actual policy department below your policy of the department that you are defending below your honor, the argument that was made was that that policy has a rational basis attached to it. Um, that there is what policy? That's what I'm trying to inquire about the policy. The internal affairs policy for the town of City Police Department requires that criminal investigations of their own officers be conducted by another law enforcement agencies. And so those investigations have to be referred out to a different law enforcement agency in order to avoid conflicts. Um, by having a police department police itself essentially. Thank you. Let's say, Oh, I'm sorry. I'm gonna ask you because I am. I'll reserve the remainder of my time for rebuttal. Thank you, Council. Let's hear from Miss Ives. Good morning, Your Honors. Um, Laura Shower Ives on behalf of Appley and also present with me are Joseph Kennedy and Adam Flores, who are on the briefs. Yeah, I'd like to begin by addressing a few of what opposing counsel just a few of the points that opposing counsel just made. Um, very, very significantly and true in this appeal, Judge Johnson's determination that the policies were discriminatory on their face cannot be reviewed, and that satisfies under this court's equal protection analysis for the step first step of establishing discriminatory intent. We're done on that. Given that concession, we also have and Miss Rogers has complained about a lack of comparator evidence, which we don't need given that concession. But Judge Johnson went far further than that. So the direct evidence that is required to prove discriminatory intent is established by these disparate policies, and these disparate policies radically treat two classes of people differently. And though, uh, though it was characterized as Chief Reynolds himself as he did so, he did not protect Nikki Bascom in this instance, um, throughout the day and throughout the month and a half previous as a result of this policy and as a result of a policy that required criminal allegations against their police officers to go through an internal affairs investigation without any provision for exigency, without any provision for arrest. And they also have multiple occasions to talk to the potential referring agency. They were on the phone three times that day and still didn't manage to do it. Those those things all established. And then you compare that to you compare that to truly the robust, remarkable domestic violence policy that they have. Silver City generally does a very, very fantastic job of protecting domestic violence victims. So like any any any discrimination when somebody doesn't give a job to a woman, are they protecting men who want the job or are they discriminating it? But you know, what is what is the intention? And here, Chief Reynolds himself sat down and authored both of these policies and Chief Reynolds himself and Captain be a loveless than enforce these policies. And in so doing, it has an inherent distrust for the for a victim for anybody. Yes, let me ask you about that. Now, Captain Villalobos, why should I understand with Chief Reynolds? He's the one that created the policy. Captain Villalobos, as you point out, was enforcing a policy that he had no power to do otherwise. So why should he incur personal liability for following a policy that he was compelled to follow under this court's precedent in both Watson and Price? A jury can that when an officer and official is acting in accord with a policy that they're acting in a discriminatory manner. And Captain Villalobos that day took multiple steps. He was on the phone on two separate occasions with the Grant County Sheriff Department, and he, like Chief Reynolds, without information from them about the ongoing criminal allegations against Captain Contreras, they had a day. Both both officers, both officials, both defendants believe that they have probable cause. They believe that they could have arrested him, and they elected not to because of this policy. Um, and at the end of the day, they were on the phone with one Grant County Sheriff's officer who was asking them for information. He wanted. He said, I would like to stop. You know, I'm thinking about stopping this guy, but I essentially and they withhold information from earlier in the day where Captain Contreras had committed what they believed was a false imprisonment and a larceny. So they were actively involved. They were enforcing the policy, and Chief Reynolds himself said that the reason that he didn't provide this information that he didn't take any action is because of these because of these two policies that combine, uh, to be racially discriminatory. Um, and really, that is all the court needs to determine in terms of the constitutionality is that question. And again, Judge Johnson offered so much more at the at the end of the day. The dispatcher, um, when talking to the Grant County Sheriff's official who was devastated that he hadn't stopped Captain Contreras, the dispatcher said, it's not your fault. They've been sleeping this sweeping this under the over a month. He relied on Silver City's police departments, usually outstanding domestic violence statistics. So generally, it in light of the fantastic policy that they have the year that Miss Boston was murdered. Yes, I ask you a question. Do you agree that there's a rational accusations of criminal conduct against police officers to another law enforcement agency? What Judge Johnson found, which is there is a that there is a rational basis. If that were the policy, um, it does make sense to have somebody else investigate. However, in the instance where you have an exigency, which seeking an arrest warrant for taking any actions in the interim while you investigate and the ultimate problem here is not the policy per se, but it's the execution of the policy involving this particular situation. The policy itself is a problem because it doesn't because it doesn't allow for any action when there is an ongoing dangerous situation, which is exactly what was happening here. So the policy problematic and it withholds information. So they take this time to investigate to determine whether or not they're going to ultimately refer what is a serious criminal complaint. That's the policy. When it's a serious criminal complaint, it is funneled into this internal affairs process. They take whatever amount of time they're going to take to make the determination of if and when they're going to refer it to an outside agency. And as Judge Johnson noted, and I think it is an important fact, even when they do ultimately refer any any investigation, any information that they learned in that investigation, they're not going to provide to the outside agency. So at the time that they are investigating on the day Miss Baskin was murdered by Captain Contreras, they had they had information. Do you think is there? Do you think the policy would have prohibited an arrest in this situation? You mentioned the officer that was said he would have pulled him over if he hadn't were facts. Couldn't couldn't. Couldn't the officer still have been arrested here by Silver City? Well, according to their own testimony, so according to Chief Reynolds, according to Captain Villalobos and following this internal affairs investigation policy, they could not. So we have we have pressed this class-based equal protection claim based on their own testimony. Like if there's a murder by a police officer and it's clear it was, you know, unlawful premeditated, you know, he he murdered here. They could not arrest him for murder. They'd have to refer it out because that's serious. According to them, and it is. It's an outrageous policy. And in this instance, the application of that policy pretty dumb. They believed they had probable cause. This isn't an instance where we have law enforcement that questions whether or not they could have arrested Captain Contreras. They believed that they could have. They made a determination. Their policy did not allow them to do so. Go ahead. No, that's all right. As I understand your objection to the policy, it's not to the policy in and of itself, but the fact that the policy does not go far enough in providing for correct your honor. And when you compare that to the domestic violence policy, which does take into account the immediacy and dangerousness of a domestic violence situation, these two policies combine to be radically discriminatory and has applied in this instance. When you have again the offender confessed, they had multiple reports. They got more and more and they and they did not. So these two policies, but even apart. So what Judge Johnson found is even apart from the to the two policies and them being discriminatory on their face and the legal consequence of that is then presumptively there is discriminatory intent, right? The beyond that there is circumstantial evidence, and it's overpowering. It's overpowering circumstantial evidence that Miss Bascom was treated differently than than any any other victim of a non law enforcement or non Silver City Police Department officer. And that included his findings, which are not reviewable on appeal that the comparator evidence the eight cases he looked at suggested that there is a different policy for the Silver City Police Department when there is not a Silver City Police Department officer involved. The statistics 94% arrest rate. I think Judge Backrek was trying to ask some questions. My apologies. No, it's fine. I just wanted to ask you apart from the policy. I mean, certainly arresting the harasser would provide protection to dispositive, because, you know, if I'm being harassed and by Joe Schmo and the police department say, you know, we have no grounds to arrest Joe Schmo. Maybe Joe Schmo lives outside the jurisdiction. Still, if they know I'm being harassed, they could, you know, stake out a vehicle in front of my house. I mean, they could have provided police protection to Nikki Bascom without regard to any of this stuff about the policy, right? Correct, Your Honor. But for equal protection purposes and for the purposes of this, we have accepted what the defendants have said about why they did what they did. But the domestic violence policy, there are a number of different ways to protect domestic violence victims. One requirement in the domestic violence policy is that if for some reason you felt the officer felt like they didn't have probable cause or couldn't locate an offender who had committed domestic violence, that they also assist the victim in getting a protective order, taking whatever action in recognition this is an incredibly serious, dangerous crime. And the domestic violence policy actually says that arrest is the preferred manner of addressing a domestic situation because it stops and prevents future violence. Watson and Watson and Price are absolutely queer enough and should have been clear enough. This has been established since 1988 in our jurisdiction, that despite the fact that you don't have the right to police protection, if police are going to provide protection, they need to do so in a non discriminatory manner. And the facts that the appellants have pointed to that are distinguishable in those cases are just simply not constitutionally relevant. It's not. It makes absolutely no difference whether or not the point is the classification. And that's what you would you would say it's kind of depends on the level of generality. But you would say that selective law enforcement is, you know, clearly established law in the 10th Circuit. And you know, I will think about whether Watson and Price get you there. But, you know, I do worry in this case, if the principle is too broad, say the police department, as I understand some jurisdictions, you have a selective enforcement policy involving certain types of criminals. The we're gonna treat immigration crimes differently than other types of crimes. We're gonna treat property crimes that occur during protests differently than other types of crimes. What's the limiting principle to this selective law enforcement concept that you want us to adopt under the Equal Protection Clause? The limiting principle is the discriminatory intent. And those cases, obviously, law enforcement cannot address every single crime. And so there is a rational basis. There's a rational basis when you when when a department decides, I want to focus on this particular issue over the other. This is about a group of people that this court has said, in particular, domestic violence victims, we aren't even just talking about crime victims, in particular, domestic violence. Your Honor, my Go ahead and finish your answer. It we this court is this court has in particular, protected equal enforcement and protection for different classes of domestic violence victims. Thank you. Thank you, Miss Rogers. You had some rebuttal time left. And could you could you, um, respond to the does the policy prohibit an arrest of a police officer during an emergency situation? The policy chief judge is silent as to that issue. It does not specifically prohibit or authorize that type of conduct. And I think that it's important to know. Can the Silver City police arrest a co officer if they have probable cause that he's committed a crime and it's an emergency? They are encouraged to follow the policy to refer it out, Judge. And obviously, they did not arrest Captain Contreras in this particular case. I see my time is up. Thank you, Your Honors. Thank you, Counsel. We understand your arguments. We appreciate your time today. The case shall be